*230 OITNION.
Phillips:
Counsel for the taxpayer point out that the contracts appointing the general agents were with Hedwall and Sundberg individually, that there was no assignment thereof to the corporation, and that the corporation could not lawfully transact business as insurance agents. It is not clear whether it is the contention of counsel that because of this situation the corporation never had any income, or whether it is urged as showing that the income is to be attributed to these individuals.
It is not unusual for a corporation, for one reason or another, to enter into a contract in the name of one of its officers, employees or stockholders. Such is the case here. Although for some purposes the individuals were the general agents, the benefits of the contracts made in their names inured to the corporation, and the contracts were in fact performed through the corporation. All of the expenses of the business, including the salaries of the officers, were paid by the corporation. All of the profits went into its treasury. We can not doubt that, although the individuals still remained personally responsible, there had been such a transfer to the corporation of their interest in "these contracts and such an acceptance thereof that the corporation ivas also a party thereto and is liable for payment of taxes upon any gains arising therefrom so long as the corporation continues to perform these contracts as its own.
Section 200 of the Revenue Act of 1918, so far as here material, defines a personal service corporation as “a corporation whose income is to be ascribed primarily to the activities of the principal owners or stockholders who are themselves regularly engaged in the active conduct of the affairs of the corporation and in which capital (whether invested or borrowed) is not a material income-producing factor.”
There was some contention that premiums were paid by the taxpayer to the insurance companies in advance of receipt of such payments from the local agent and that capital was a material income-producing factor for that reason. Although the oral testimony was *231 to the effect that no payments were forwarded to the insurance company prior to remittance from the local agents, the Commissioner relied upon a material difference which existed between the accounts receivable and the accounts payable, as shown by trial balance sheets. It appears, however, that the commissions which taxpayer was entitled to receive were not segregated from these separate accounts until the close of each year, and that the difference between the accounts receivable and payable represents taxpayer’s commissions, to a considerable degree.
It appears that remittances were due from the local agents forty-five days after the close of each month, while taxpayer had seventy-five days in which to make its remittance to the insurance company. The testimony is to the effect that because of this interim period the taxpayer always had on hand from $8,000 to $10,000 which was due to the fire insurance companies, and for about nine months of each year had from $50,000 to $100,000 due to the hail insurance companies. Considering all of the testimony, we are satisfied that taxpayer was not required or accustomed to make payments of premiums to the insurance companies prior to receipt from the local agents.
In addition to collecting and remitting premiums from local agents, taxpayer performed three other principal functions in the conduct of its business. It secured agents and took steps to retain their business, it accepted or rejected the insurance risk and rein-sured whenever it seemed advisable so to do, and it adjusted losses. Each was an integral part in the transaction of the business, and each played its part in the production of the income. Only one of these functions was performed entirely by the stockholders. The adjustment of losses, certainly an important matter, appears to have been intrusted entirely to a company specializing in such matters. Relations with the local agents were maintained in part through the stockholders and in part through special agents in the employ of the taxpayer. In such circumstances as are disclosed by this record, after giving full credit for the important functions performed by the stockholders, their experience and standing in the business and the undisputed fact that the contracts as general agents were secured because of this experience and standing and were made with them as individuals, it nevertheless appears that the taxpayer has failed to establish the first requirement of a personal service corporation, namely, that the income shall be ascribed primarily to the activities of the principal stockholders.

Decision mil be entered for the Commissioner.

Tiros sell not participating.